DA 19-0149

FILED

03/30/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0149

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 78N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

JOHN JAYCOB FISHBAUGH,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 16-0452
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Moses Okeyo, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Brett D. Linneweber,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  March 3, 2021

Decided:  March 30, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2 John Jaycob Fishbaugh appeals from the October 15, 2018 order of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to withdraw his guilty plea.

¶3 In May 2016, Fishbaugh was charged with three felonies, including Sexual Intercourse Without Consent, § 45-5-503(2), MCA, Sexual Abuse of Children, § 45-5-625(1)(i), MCA, and Sexual Assault, § 45-5-502(3), MCA, arising out of sexual contact he initiated upon S.H., the nine-year-old granddaughter of Fishbaugh's girlfriend. Fishbaugh was a truck driver who took S.H. with him on a work trip through multiple states and, in Montana, through Missoula and Yellowstone counties. In light of S.H.'s age, the State also sought enhancements on the first two charges for imposition of 100-year sentence terms, with no deferral or suspension of the first 25 years of the sentences. Criminal charges were initially filed against Fishbaugh in both Missoula and Yellowstone counties, and counsel was appointed for Fishbaugh in both venues. In Yellowstone County, Ashley Harada and Alexander Roth were appointed to represent Fishbaugh.

2

Ultimately, the State dismissed the Missoula County charges and pursued the charges in Yellowstone County.

¶4 Trial was set for October 16, 2017, but that time was re-purposed as a change of plea hearing following the entry of a plea bargain agreement, under which the State would alter the charges to one count of Sexual Assault and one count of Indecent Exposure, and dismiss the remaining charge. The State also agreed to abandon its request for sentence enhancements and to offer a joint sentencing recommendation of 25 years in the Montana State Prison, with 10 years suspended, for both remaining charges, to run concurrently.

¶5 At the start of the change of plea hearing, Fishbaugh stated to the District Court that he had reviewed the amended charging documents and provided the District Court an acknowledgment of waiver of rights and plea agreement, and that he intended to plead guilty to the amended charges. The District Court asked Fishbaugh if he had any further questions, and he answered in the negative. When the District Court asked if he was certain, and if he needed any more time, Fishbaugh answered "I'm just really having a hard time taking this," and "I just feel pressured into doing this." At that point, the District Court recessed the hearing to provide time for Fishbaugh to consult with his counsel.

¶6 About an hour later, the District Court reconvened the hearing and inquired concerning the status of the proceeding. Defense counsel Harada advised the District Court that the defense was ready to continue with the change of plea hearing. The District Court then addressed Fishbaugh:

THE COURT: Approximately one hour ago you told me you felt like you were being pressured into this and you had reservations about pleading guilty. Have those issues been resolved?

[FISHBAUGH]: Yes, Your Honor.

THE COURT: Are you certain?

[FISHBAUGH]: (Pause.) Yes.

THE COURT: Yes?

[FISHBAUGH]: Yes, sir.

THE COURT: Because you need to understand, sir, that your decision today is final. This is something that cannot be taken back. So I want to make sure that you are making the best possible choice with the alternatives in front of you, and we'll get to all that, but when someone tells me that they feel like they're being pressured into something, that gives me some concern. And so I want to make sure this plea is voluntary. So are you absolutely certain this is what you want to do?

[FISHBAUGH]: Yes, Your Honor.

¶7     Advising Fishbaugh to stop the court if he had any questions, the District Court explained the charges, the maximum potential punishment, the joint sentencing recommendation, including that the State was withdrawing its request for sentence enhancement, the fact the recommendation was not binding upon the court, and the rights Fishbaugh would be waiving by entering a guilty plea. For each of these, Fishbaugh answered that he understood. Further, Fishbaugh stated he was willing to waive his rights by entering a guilty plea and that he was not under the influence of medications, drugs or alcohol. The District Court asked Fishbaugh if he had a sufficient opportunity to discuss the risks and benefits of going to trial versus entering a plea with his counsel, and if he

4

believed he was making "the best possible choice with the alternatives in front of you." Fishbaugh responded affirmatively. Then, the District Court asked if anyone had threatened or coerced Fishbaugh into entering this agreement and pleading guilty, to which Fishbaugh answered, "I feel like they coerced me into this, but other than that, I—I still have to. . . ."

¶8 This was followed by an off-the-record discussion between Fishbaugh and his counsel. Upon returning to the record, the District Court asked Fishbaugh twice whether anyone had threatened or coerced him into entering the plea agreement and pleading guilty, and each time he answered, "no." What followed was an extensive discussion to explain that Fishbaugh also had the option of proceeding to trial, and was not required to enter a plea. The District Court stated, "So you've been hesitant today, I've had some concerns, so I want to make absolutely sure this is exactly what you want to do." Then:

> THE COURT: And the reality here is, you need to analyze—well, your attorneys have talked to you about this, you can go to trial on the original Information, and we'd have the trial like we talked about. Okay? Or you can proceed with a guilty plea today on the Amended Information. But you need to be making a voluntary choice.
>
> (Pause.)
>
> THE COURT: Did you want to confer with your counsel?
>
> [FISHBAUGH]: I, uh. The thing looks good here, so . . .
>
> THE COURT: You want to proceed?
>
> [FISHBAUGH]: I really don't have a choice, but to—
>
> THE COURT: Well—

5

[FISHBAUGH]: —because I can't—

THE COURT: —but you do, you do have a choice, you have a choice to go to trial.

[FISHBAUGH]: *I know I have a choice, but when you're standing in my shoes, I have no choice.*

MR. ROTH: So, Mr. Fishbaugh, you do understand that you have a choice between going to trial and taking the plea?

[FISHBAUGH]: Yeah, when I look at the evidence and what I've been told—

MR. ROTH: So you believe it's your best choice?

[FISHBAUGH]: My best choice—

MR. ROTH: —based on—

[FISHBAUGH]: —you told me this.

MR. ROTH: Your best choice is to take this plea; is that correct?

[FISHBAUGH]: That's correct. That's about the only choice I really have. Because what they tell me and what's here, I have to take this.

MS. HARADA: You don't have to do anything, Mr. Fishbaugh. We could—

[FISHBAUGH]: If I don't want to spend the rest of my life in prison, I have to take this.

MR. ROTH: Mr. Fishbaugh, you always have the choice to go to trial. And it may not be a good choice, this may be a better choice—

[FISHBAUGH]: I go to trial and lose and then what happens?

MS. HARADA: We've gone over this, Mr. Fishbaugh.

MR. ROTH: We've explained that.

6

[FISHBAUGH]: Yeah, I spend the rest of my life in prison. I don't want to spend the rest of my life in prison, so I have to take this. Because from basing it on your information, and you're counsel, this is what I got to go with.

THE COURT: *Okay. I want to make it clear, though, you don't have to do anything. You have the right to a trial.* And I'm sure you have had extensive consultations with your attorneys, who are both well versed in criminal law, based on the evidence, and they can give you advice, but *this has to be your choice and it has be one that you do — you make knowingly and voluntarily.*

(Pause.)

[FISHBAUGH]: I have to a take the deal.

THE COURT: So you want to plead guilty?

[FISHBAUGH]: Don't want to, but I have to.

THE COURT: It is your decision to plead guilty?

(Discussion off the record between counsel and the Defendant.)

MR. ROTH: Mr. Fishbaugh, the hold up we're having here, because *I know you feel that you only have the one option because the other option is bad, the Court needs to be certain you understand that there still is another option and you're choosing this of your own freewill. And that's not because — no one here has told you that you cannot go to trial. We've told you all along it's your choice to go to trial.* We've represented strategies of trial, what would proceed at trial, we've advised you of these recommendations, but the decision is yours. And because you have a choice now, you don't have to take one choice over the other. But if you follow our advice, we recommend one of the choices over the other, *you've had a chance to review both of the choices, and having reviewed that, are you choosing to take the Plea Agreement?*

[FISHBAUGH]: *Yes. I need to take the Plea Agreement.*

THE COURT: Okay. And no one has threatened you or coerced you into entering this agreement and pleading guilty?

[FISHBAUGH]: No.

THE COURT: Looking at your options, you feel like this is the best choice for you to make?

[FISHBAUGH]: Yes.

THE COURT: Are you satisfied with the services of your attorneys?

[FISHBAUGH]: Yeah.

(Emphasis added.)

¶9 Fishbaugh then admitted to subjecting S.H. to various sexual acts forming the basis of the charges, that she was nine years old at the time and that he was four or more years older than her. The District Court accepted the pleas as voluntarily made, setting sentencing for January 31, 2018. However, in mid-January, Fishbaugh wrote the District Court asserting his counsel had not made sufficient efforts in preparing his defense, that he still maintained his innocence, and that he was forced to enter the guilty plea because his counsel had prepared no defense to take to trial. At the time scheduled for sentencing, the District Court instead took up the issue of Fishbaugh's representation.

¶10 Fishbaugh complained that there was a breakdown of communication between him and his counsel, they had not thoroughly investigated his case, and had coerced him to enter the plea agreement. In response to Fishbaugh's claims, Harada said, "I'm flabbergasted, frankly," and then explained evidentiary investigations undertaken on Fishbaugh's behalf, rebutted further allegations made in his letter, and summarized that "the accusations are outrageous." Harada stated that, during the plea hearing, Fishbaugh had been repeatedly advised he did not have to take the plea agreement, adding, "if he's going to continue to represent things to the Court that aren't true, I'm not comfortable

8

moving forward as his counsel." Roth responded that he strongly disagreed with "almost everything" Fishbaugh had stated in his letter, but acknowledged that the disagreement over these facts supported a finding that there had been a breakdown in communication. The District Court found, based upon the statements of the parties, that a complete breakdown of the attorney-client relationship had occurred, and ordered appointment of new counsel.

¶11 Shortly after assumption of representation by new counsel, Fishbaugh filed a motion to withdraw his plea. The District Court conducted a hearing on the motion on July 10, 2018, at which Fishbaugh testified, claiming he was coerced into the plea agreement by Harada, who had threatened to "walk[] out on me" if he had not accepted the plea deal. However, Fishbaugh acknowledged he had not raised this threat during the change of plea hearing or the status hearing on his representation. When asked by the prosecutor, "[t]he reality is that you were unhappy that the only other option was a potential sentence if you were found guilty that was even worse, correct?" Fishbaugh responded, "Correct."

¶12 On October 15, 2018, the District Court entered extensive findings of fact, conclusions of law and an order denying the motion to withdraw. The District Court found Fishbaugh's allegations were not credible and that his claims that he was coerced into taking the plea agreement "have no support in the record." Drawing from the record of the three-hour change of plea hearing, the District Court found Fishbaugh's feeling of coercion to enter a guilty plea was caused by, as stated in his own words, "[i]f I don't want to spend the rest of my life in prison, I have to take this," and not upon a threat from counsel to

9

abandon him. The District Court concluded Fishbaugh had not established good cause to withdraw his plea. On December 12, 2018, Fishbaugh was sentenced in accordance with the joint plea recommendation. He now appeals from the denial of his motion to withdraw his plea.

¶13 "When a criminal defendant appeals the denial of his motion to withdraw a guilty plea, we review the trial court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine if they are correct." *State v. Newbary*, 2020 MT 148, ¶ 5, 400 Mont. 210, 464 P.3d 999 (citing *State v. Warclub*, 2005 MT 149, ¶ 24, 327 Mont. 352, 114 P.3d 254). Whether a plea is voluntary is a mixed question of law and fact that this Court reviews de novo for correctness. *Warclub*, ¶ 24. A defendant may withdraw his guilty plea within one year of final judgment for good cause. Section 46-16-105(2), MCA. "We analyze numerous case-specific considerations to determine whether good cause is shown to withdraw a guilty plea, including an inadequate colloquy, newly discovered evidence, intervening circumstances, or any other reason for withdrawal that did not exist when the defendant pleaded guilty." *Newbary*, ¶ 9 (citations omitted).

¶14 Fishbaugh argues the District Court erred by concluding he did not establish good cause to withdraw his plea. He focuses on the District Court's determination, in January 2018, that a breakdown in the relationship with his counsel had occurred, and argues that this was sufficient to establish good cause, but must extrapolate from the record to contend that this collapse had occurred "[p]retty early on" in the relationship, which in turn led to counsel's coercion of Fishbaugh "to accept the plea agreement against his wishes" in

October 2017. Fishbaugh attempts to date the breakdown to May of 2016 when Harada requested co-counsel, but the record does not support a conclusion that a breakdown had occurred by then or was the reason for appointment of co-counsel. Indeed, that was the month he was originally charged, and he worked with his co-counsel for some 20 months thereafter. Fishbaugh must acknowledge the breakdown in communication did not lead to replacement of his counsel until three months after the change of plea hearing, during which, upon lengthy questioning, Fishbaugh had repeatedly acknowledged satisfaction with his counsel and understanding of his option to reject the plea agreement, and that his significant allegations of coercion by his counsel, including the threat to "walk[] out on me," did not first arise until much later, at the hearing on his motion to withdraw his plea in July 2018. At that hearing, Fishbaugh acknowledged under cross examination that his feelings of coercion had arisen from the circumstances he faced—that the alternative to the plea bargain could result in a much worse outcome. This is likewise reflected in Fishbaugh's statements during the change of plea hearing—"I know I have a choice, but when you're standing in my shoes, I have no choice." The District Court found Fishbaugh's claims were not credible, and that there was not good cause for withdrawal of his plea. Its findings of fact and conclusions of law are supported by the record.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

11

¶16    Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR